UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL INDUSTRY PENSION
FUND, *et al.*,

    Plaintiffs,

  v.

ALIQUIPPA COMMUNITY HOSPITAL,

    Defendant.

Civil Action No. 07-468 (CKK)

MEMORANDUM OPINION
(June 25, 2009)

    Plaintiffs Service Employee International Union National Industry Pension Fund (the "Fund") and its Trustees[1] (together with the Fund, "Plaintiffs") bring suit against Defendant Aliquippa Community Hospital ("Aliquippa" or "Defendant") pursuant to the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1) & (g), and the Labor Management Relations Act of 1947, as amended, ("LMRA"), 29 U.S.C. § 185(a), to collect unpaid collectively bargained contributions, remittance reports, interest, and liquidated damages owed by Defendant. Although Defendant—through its then-attorneys of record—was initially responsive to the instant lawsuit, Plaintiffs and the Court were subsequently advised that Aliquippa had sold its assets and ceased operations. Efforts to reach Aliquippa's former officers have proven unsuccessful, and Defense counsel was permitted to

---

[1] The Fund is joined as Plaintiff in this action by several Trustees of the Fund whose duty it is to administer the Fund for the benefit of the participants and beneficiaries: Andrew Stern, Roderick S. Bashir, Charlie Ridgell, Sharleen Stewart, Jim Berg, Edward Manko, John J. Sheridan, Larry T. Smith, and Dave Stillwell. Complaint, Docket No. [1], ¶ 5.

withdraw as counsel of record, as they had not received any indication from the third-party entity that had purchased the Defendant hospital that they were to continue their representation of Aliquippa during this litigation. Defendant has since been unresponsive to the instant action.

In an effort to resolve this matter, Plaintiffs filed for summary judgment, seeking an order requiring Defendant to submit all reports and contributions in accordance with the applicable collective bargaining agreements; and reasonable attorneys' fees and costs. Defendant did *not* file an Opposition to Plaintiffs' Motion for Summary Judgment, thereby rendering the motion uncontested. After a searching review of Plaintiffs' Motion for Summary Judgment, the attached exhibits, the relevant case law, statutory authority, and the entire record of the case as a whole, the Court shall GRANT-IN-PART, DENY-IN-PART, AND HOLD-IN-ABEYANCE-IN-PART Plaintiff's Motion for Summary Judgment, for the reasons that follow.

## I. BACKGROUND

### A. *Factual Background*

The facts underlying this case are undisputed. The Fund is an employee pension benefit plan and multiemployer plan within the meaning of ERISA, established and maintained for the purpose of providing pension benefits to eligible employees, their families and dependents. Plaintiffs' Statement of Material Facts ("Pls.' Stmt."), Docket No. [30-4], ¶ 1; *see also* Complaint, Docket No. [1], ¶ 4; Answer, Docket No. [6], ¶ 3 (admitting same). The Fund is also a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA. Compl. ¶ 4. Defendant is a corporation incorporated in the State of Pennsylvania and an "employer in an industry affecting commerce," as defined under ERISA and LMRA. Compl. ¶¶ 5, 6; Ans. ¶ 4 (admitting same).

As explained above, at some unspecified time after the filing of the instant action, it appears that Defendant sold its assets to a third-party entity and ceased operations.  *See* Motion for Leave to Withdraw and to Enlarge Discovery Response Time, Docket No. [19], ("Def.'s Mot. to Withdraw").  Plaintiffs, however, have failed to provide the Court with any specific evidence demonstrating whether Defendant is, in fact, now defunct nor have Plaintiffs otherwise provided information as to the timing and nature of Defendant's apparent dissolution.  As a result, it is unclear from the record now before the Court whether Defendant remains a viable entity today.  Nonetheless, it is clear that Defendant was a viable legal corporation at least as of the date Defendant filed its Answer to Plaintiff's Complaint through counsel on May 2, 2007.  *See* Ans. ¶ 4 (admitting that Defendant is a corporation incorporated in the state of Pennsylvania).

On June 6, 2005, Defendant entered into a collective bargaining agreement ("Agreement") with District 1199P, Service Employees International Union ("District 1199P"), the exclusive bargaining agent for certain of Defendant's employees.  Pls.' Stmt. ¶ 3; *see also* Compl. ¶¶ 8, 9; Ans. ¶ 5 (admitting same).  The Agreement was effective for the period February 7, 2005 through June 30, 2008.  Compl. ¶ 9 & Ex. 1 (true and correct copy of the Collective Bargaining Agreement) (hereinafter "Agreement"); Ans. ¶ 5 (admitting same).  Pursuant to Article 19.1(a) of the Agreement, Defendant agreed to

> participate in, and contribute to, for all eligible bargaining unit employees, the Service Employees International Union, National Industry Pension Fund, subject to the terms set forth in Appendix J.

Pls.' Stmt. ¶ 4; *see also* Agreement ¶ 19.1(a).  Appendix J in turn provides that

> [e]ffective, and retroactive to June 30, 2004 and in addition to any payment of interest or penalties due to the Fund, and for the duration of this Collective Bargaining Agreement, including any extensions or renewals thereof, the Employer

> agrees that for each hour of pay paid to each employee to whom this Agreement is applicable, . . . it will contribute to the Fund, effective and retroactive to the date of Plan Termination, the total sum of sixty cents ($.60) per hour.

Pls.' Stmt. ¶ 5; *see also* Agreement, Appx. J, intro. & § 3. Defendant was required to submit such contributions to the Fund in a timely manner, together with a remittance report. Pls.' Stmt. ¶¶ 6 & 7; *see also* Agreement, Appx J, § 3(a) ("Contributions required . . . shall be paid to the Fund on or before the fifteenth day of the month following the period on which contributions are due or before such date as the Trustees may hereafter determine."); *id.*, Appx. J, ¶ 3(b) ("[c]ontributions shall be transmitted together with a remittance report").

The Trustees of the Pension Fund have also adopted the SEIU National Industry and Pension Fund Statement of Policy for Collection of Delinquent Contributions, (hereinafter, the "Collection Policy"), regarding the collection of employer contributions to the Fund. Pls.' Stmt. ¶ 10; *see also* Compl., Ex. 3 (true and correct copy of the Collection Policy) (hereinafter, "Collection Policy"). Pursuant to the terms of the Agreement, Defendant was bound to the Collection Policy as well. Pls.' Stmt.' ¶9; *see also* Agreement, Appx. J, § 4 (Defendant "agrees to be to be bound by . . . all resolutions and rules adopted by the Trustees pursuant to the powers delegated to them by that Agreement, including collection policies"). In turn, under the terms of the Collection Policy, Defendant agreed to pay liquidated damages and interest on any delinquent contributions, as follows:

> 1.   Interest owed by a delinquent Employer shall be calculated from the due date for the delinquent contributions through and including the date payment is actually received by the Fund Office at the rate of ten percent (10%) per annum.
>
> 2.   In the event a lawsuit or other legal action is filed . . . , liquidated damages shall be calculated from the due date, and shall become due and owing if a

> lawsuit is filed . . . . The amount of the liquidated damages shall be greater of:
>
>> (a) the interest on the delinquent contributions determined in accordance with paragraph 1 above;
>
>> or
>
>> (b) 20% of the delinquent contributions.

Pls.' Stmt. ¶ 9; *see also* Collection Policy §§ 5.1 & 5.2.  In addition, Defendant agreed to be liable to the Fund for all attorneys' fees and costs in any legal action taken to recover delinquent contributions, as follows:

> 3. Attorneys' fees shall be assessed against a delinquent Employer, at a reasonable hourly rate (which rate shall be no less than the hourly rate charged to the Fund for such services) for all time spent by legal counsel in collection efforts pursuant to this policy or in enforcing the Board of Trustees' rights to payroll reviews . . . .
>
> 4. All costs actually incurred in court actions for collection of delinquent contributions or to enforce the Trustees' right to conduct a payroll review of the Employer's records shall be assessed against the delinquent Employer, including, but not limited to, filing fees, fees for service of process, copying charges, postage, and such other costs as would otherwise be charged to the Fund.

Pls.' Stmt. ¶¶ 10 & 11; *see also* Collection Policy §§ 5.3 & 5.4.

It is undisputed that Defendant failed to timely submit any remittance reports or contributions to the Fund since June 30, 2004.  Pls.' Stmt. ¶ 12 ("According to the Fund's records, Aliquippa has not submitted any reports, nor made any contributions or payments to the Fund since the date of June 30, 2004."); *see also* Compl. ¶ 18; Ans. ¶ 10 ("Defendant admits that it has not remitted any contributions or remittance reports from June 30, 2004 to present.").

*B.     Procedural Background*

Plaintiffs filed the Complaint in the above-captioned matter on March 13, 2007.  *See* Compl.  Counsel for Defendant were granted leave to appear *pro hac vice* on April 24, 2007, *see* 4/24/07 Min. Orders, and Defendant subsequently filed an Answer to Plaintiff's Complaint via defense counsel, *see* Ans.  The Court held an Initial Scheduling Conference on October 23, 2007, at which time it set a schedule for proceeding with discovery in this matter.  *See* Scheduling and Procedures Order, Docket No. [16].  Pursuant to that schedule, discovery was to be completed by April 18, 2008.  *See id.* at 6.

On February 21, 2008, Defense counsel filed a motion seeking to withdraw as counsel for Defendant and to extend the discovery deadline if and until new counsel was retained by Defendant.  *See* Motion for Leave to Withdraw and to Enlarge Discovery Response Time, Docket No. [19], ("Def.'s Mot. to Withdraw").  Defense counsel represented that the Defendant had "sold its assets and ceased operations" and was therefore "no longer a viable entity." *Id.* at 1.  Furthermore, Defense counsel stated that "Defendant is defunct and unable to participate in the court proceedings or in counsel's efforts to defend the case." *Id.* at 2.  Plaintiffs filed an opposition to Defense counsel's motion requesting leave to withdraw as counsel of record.  *See* Plaintiffs' Opposition to Defendant's Motion for Leave to Withdraw and to Enlarge Discovery Response Time, Docket No. [20], ("Pls.' Opp'n to Def.'s Mot. to Withdraw").  Although Plaintiffs had "no objections to Defense Counsel's withdrawal after discovery is completed," Plaintiffs opposed any request to withdraw until after discovery was completed.  *See id.* at 1-2.  Plaintiffs noted that discovery was still outstanding and asked that Defense counsel be required to take steps to make payroll records requested during discovery available to Plaintiffs.  *See id.* at

2; *see also* 9/4/08 Show Cause Order, Docket No. [26], at 1.

On April 16, 2008, the Court held a conference call with counsel for both parties participating, during which the Court issued an oral ruling holding Defense counsel's motion to withdraw in abeyance in order to allow counsel the opportunity to attempt to recover the payroll records at issue in this litigation. *See* 4/16/08 Min. Order; *see also* 4/18/08 Order, Docket No. [23]. The Court also issued an Order on April 18, 2008, directly requiring Defendant to submit all relevant payroll records to Defense counsel, and retaining the Court's jurisdiction over the matter for further action in connection with the Order, if necessary. *See* 4/18/08 Order, Docket No. [23].

On June 13, 2006, Defendant submitted a Status Report via defense counsel advising the Court that their efforts to obtain the requested payroll records had been unsuccessful. *See* Def.'s 6/13/09 Status Report, Docket No. [24]. As Defense counsel explained, they had "sent a certified letter to the Chairman of the entity that purchased the assets of Defendant," as well as to "the purchasing entity's CEO, Chief Administrative Officer, and Director of Human Resources," "advising that the Court had ordered Defendant's payroll records be produced." *Id.* at 1. Despite these efforts, Defense counsel advised that "[t]o date, Counsel has not received any payroll records despite numerous requests for the records to be produced," and "[i]t is assumed that the records are not going to be provided as requested by Counsel." *Id.* at 2. Finally, Defense counsel noted that they had "received no indication that [they] are to continue to represent Defendant, Aliquippa Community Hospital, in the present litigation." *Id.* at 2.

The Court subsequently held another status conference on the record with the parties on June 20, 2008, at which time the Court granted Defense counsel's motion to withdraw as counsel

of record for Defendant, with Plaintiffs' consent.  *See* 6/20/08 Order, Docket No. [25].  In addition, the Court stayed the discovery schedule "in order to allow Plaintiff[s] to investigate and/or join the appropriate parties in the case."  6/20/08 Min. Order.  Plaintiffs were required to file a status report on or before August 29, 2008, advising the Court of developments in this matter.  *Id.*

Plaintiffs, however, failed to file the required status report or to appear for a scheduled Status Conference, and the Court subsequently issued a Show Cause Order requiring Plaintiffs to show cause why the instant case should not be dismissed for want of prosecution.  *See* 9/4/08 Order, Docket No. [26].  Rather than file a response to the Show Cause Order, as required, Plaintiffs instead filed a Motion for Summary Judgment.  *See* Docket No. [27].  As the Court observed, however, the motion was premature and failed to comply with the local civil rules of this Court.  *See* 9/9/08 Min. order.  The Court therefore denied without prejudice Plaintiffs' motion for summary judgment and required Plaintiffs' to comply first with the Show Cause Order.  *Id.*

Plaintiffs then filed the required response to the Show Cause Order on September 10, 2008.  *See* Plaintiff's Response to Order to Show Cause, Docket No. [28], ("Pls.' Resp.").  Plaintiffs advised the Court that they "believe[d] that Defendant may have [been] sold to an entity that constitutes a successor of Aliquippa Community Hospital," but "[w]ithout aid of discovery from Defendants . . . lack[ed] adequate information to amend the lawsuit to assert a claim against further Defendants at this time."  *Id.* at 2.  Plaintiffs concluded that the filing of dispositive motions "as to the issue of liability would be the most expeditious way to conclude this lawsuit" and requested the Court's permission to file such a motion.  *Id.* at 2-3.  The Court

granted Plaintiffs' request, and ordered Plaintiffs to file a dispositive motion by no later than September 24, 2008. *See* 9/10/08 Min. Order.

Plaintiffs subsequently submitted a motion for summary judgment, which the Court struck for failure to comply with the local rules of this Court. *See* 9/11/08 Min. Order. Plaintiffs were permitted to re-file an appropriate motion in compliance with the local rules, which they did on September 19, 2008. *See* Plaintiffs' Motion for Summary Judgment, Docket No. [30], ("Pls.' MSJ"). As stated above, Defendant has not filed an opposition to Plaintiffs' motion, which is therefore unopposed.

## II. LEGAL STANDARDS AND DISCUSSION

This case involves a straightforward application of controlling legal principles to uncontested facts. Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

Plaintiffs contend that Defendant breached the Agreement and violated ERISA by failing to timely submit contributions and the accompanying remittance reports to the Fund as required under the terms of the parties' Agreement. Pursuant to section 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C § 1145. In an action by a fiduciary for or on behalf of a plan to enforce section 515, the

court shall award the plan:

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of —

        (i) interest on the unpaid contributions, or

        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

*Id.* § 1132(g)(2).

As established above, it is undisputed that Defendant was contractually bound by its Agreement with District 1199P to timely submit contributions to the Fund along with the required remittance reports retroactive to June 30, 2004, and that Defendant has failed to do so. Accordingly, the Court finds that Defendant is liable for failing to timely submit the required contributions and remittance reports in violation of the parties' Agreement and section 515 of ERISA. Because Defendant has not filed an Opposition in this case, none of these conclusions have been contested, and none have been controverted by anything in the record. The Court therefore GRANTS Plaintiffs' Motion for Summary Judgment as to Defendant's liability.

Having established that Defendant is liable for failing to remit contributions in violation of the Agreement and ERISA and for failing to submit the required remittance reports in breach of the Agreement, the Court turns next to the remedy requested. As an initial matter, the Court

emphasizes that any remedies ordered herein are directly solely to the Defendant hospital (*i.e.*, the entity that filed an answer with the Court via counsel)—and not to the third-party entity that purchased Defendant's assets.  Plaintiffs have failed to provide any information to suggest that the third-party entity that purchased Defendant's assets assumed Aliquippa's liability.  Moreover, Plaintiffs have not introduced any evidence as to the specific identity of the purchasing entity nor have Plaintiffs made any efforts to address the legal effect of the sale of the Defendant hospital on the instant proceedings.  For example, Plaintiffs have not indicated whether there are any relevant statutory provisions under Pennsylvania state law (the state in which the Defendant hospital was incorporated) that may control when a purchasing entity is legally responsible for the debts or judgments of a purchased entity.  Put simply, the Court is left without any factual or legal information demonstrating that the Court can, in fact, enforce an order against Defendant's successor, which is not a party to this lawsuit.  Accordingly, the Court's orders are directed toward the only Defendant now before it—the Defendant hospital, not the third-party purchaser.

Turning then to the question of remedy, as Plaintiffs explain, because of Defendant's failure to submit the required remittance reports, the Fund is currently unable to determine the amount of contributions owed by Defendant.  Pls.' MSJ at 5-6.  Accordingly, Plaintiffs request that the Court issue an "order requiring Defendant to submit all reports and contributions in accordance with the applicable collective bargaining agreements."  Pls.' MSJ at 1.[2]

---

[2] Plaintiffs also request the Court issue "a declaratory order that Defendant was required to submit contributions to the Pension Fund."  Pls.' MSJ at 1.  In light of the Court's finding above that Defendant is liable for failing to timely submit the required contributions and remittance reports in violation of the parties' Agreement and section 515 of ERISA, the Court concludes that the requested declaratory relief is both duplicative and unwarranted.  The Court therefore DENIES Plaintiffs' request for a declaratory judgment.

Upon consideration of Plaintiffs' motion and the record as a whole, the Court shall GRANT Plaintiffs' request for an order requiring the Defendant hospital (*i.e.*, the party who filed an answer with this Court and not the third-party purchaser) to provide Plaintiffs with the required remittance reports, but shall HOLD IN ABEYANCE Plaintiffs' request for an order requiring Defendant to pay the delinquent contributions. Defendant has admitted in its answer filed with the Court that it failed to provide the required remittance reports, and it is evident that Plaintiffs are unable to accurately determine the amount of contributions owed or properly credit employees with pension benefits based on hours worked without the remittance reports. *See* Pls.' MSJ at 2, 4. Although the Court has already once ordered that the Defendant submit the relevant payroll records at issue to then-Defense counsel, *see* 4/18/08 Order, Docket No. [23], Defendant failed to so, and Plaintiffs were otherwise unable to obtain the records at issue. Nonetheless, the Court, in its discretion, shall—once again—order Defendant to provide the required remittance reports to Plaintiffs, as requested. Defendant shall produce the reports to counsel for Plaintiffs by no later than **July 31, 2009**. However, as Plaintiffs are currently unable to provide the Court with any information as to the amount of delinquent contributions owed, Plaintiffs' request for an order compelling payment of the contributions is premature.

In addition, Plaintiffs have requested $2,532.00 in attorneys' fees and costs. Pursuant to the Agreement and the related Collection Policy, the Defendant hospital (*i.e.*, the party who filed an answer with this Court and not the third-party purchaser) agreed to be liable to the Fund for all attorneys' fees and costs in any legal action taken to recover delinquent contributions. Pls.' Stmt. ¶¶ 10 & 11; *see also* Collection Policy §§ 5.3 & 5.4. Plaintiffs have submitted the sworn declaration of Richard C. Welch in support of their Motion, which avers that Plaintiffs have

incurred a total of $2,532.00 in attorneys' fees and costs in instituting and litigating this action. *See* Pls.' MSJ, Ex. A (Declaration of Richard C. Welch). The Court has reviewed the Declaration and attached documentation and finds that the amount requested is reasonable. Plaintiffs are therefore awarded $2,532.00 in attorneys' fees and costs.

Finally, the Court shall require Plaintiffs to file, on or before **August 14, 2009**, a supplemental submission with the Court indicating whether Defendant has provided the records as required. Plaintiffs must also indicate any additional efforts they have undertaken to prosecute this case, *i.e.*, any investigations into whether the entity that purchased the Defendant hospital may be subject to successor liability and, if that is the case, any efforts to join that entity as a defendant in this case. Without additional information as to damages and/or the current legal status of either the Defendant hospital or the third-party purchaser, this lawsuit cannot proceed forward. Plaintiffs are thus placed on notice that unless they are able to indicate to the Court that they can prove the amount of contributions owed by Defendant or show that the third-party entity that purchased the Defendant hospital has successor liability by that date, the Court shall dismiss this case without prejudice.

### III.  CONCLUSION

For the reasons stated above, the Court GRANTS-IN-PART, DENIES-IN-PART, and HOLDS-IN-ABEYANCE-IN-PART Plaintiffs' [30] Motion for Summary Judgment. Specifically, the Court GRANTS Plaintiffs' motion as to liability. In addition, the Court GRANTS Plaintiff's request for an order compelling Defendant to submit to Plaintiffs all remittance reports owed under the Agreement by no later than July 31, 2009, and for a monetary award of $2,532.00 for reasonable attorneys' fees and costs. The Court, however, DENIES

Plaintiffs' request for declaratory relief and HOLDS IN ABEYANCE Plaintiffs' motion as to its request for an order compelling payment of the contributions.  Plaintiffs are required to file, on or before **August 14, 2009**, a supplemental submission with the Court indicating whether Defendant has provided the records as required and any additional efforts they have undertaken to prosecute this case.  An appropriate Order accompanies this Memorandum Opinion.

Date:   June 25, 2009

                                                                     /s/
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge